J-S21002-19

2019 PA Super 180

| IN THE INTEREST OF: Z.N.F., A MINOR | : | IN THE SUPERIOR COURT |
|---|---|---|
| | : | OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: H.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2889 EDA 2018 |

Appeal from the Decree Entered September 11, 2018
In the Court of Common Pleas of Philadelphia County
Family Court at No: CP-51-AP-0000146-2017

BEFORE:  STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

OPINION BY STABILE, J.:                              **FILED JUNE 07, 2019**

H.F. ("Mother") appeals from the decree entered on September 11, 2018, in the Court of Common Pleas of Philadelphia County, that involuntarily terminated her parental rights to her daughter, Z.N.F. ("Child"), born in July of 2013.  Upon review, we affirm.

This appeal arises from the decrees originally entered on February 24, 2017, that involuntarily terminated Mother's parental rights to Child and her older sibling, Z.E.A.F., born in May of 2011 (collectively, "the children"), pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[1, 2]  This Court

---

[1] By separate decree entered on February 24, 2017, the trial court involuntarily terminated the parental rights of Child's father, J.F., who is not a party to this appeal.

[2] The Philadelphia Department of Human Services ("DHS") filed petitions for the involuntary termination of Mother's parental rights on February 7, 2017.

vacated the original decrees and remanded the case for the trial court to hold a hearing to determine, in part, what role Athena Mary Dooley, Esquire, performed on behalf of the children during the involuntary termination proceeding on February 24, 2017. *See In re Z.N.F. & Z.E.A.F.*, 192 A.3d 232 (Pa. Super. filed May 9, 2018) (unpublished memorandum). In so doing, the panel explained that Attorney Dooley is identified in the transcript of the proceedings as a child advocate. However, it was unable to identify whether Attorney Dooley acted in the role of a guardian *ad litem* ("GAL") who was appointed to represent the children's best interests, as an independent attorney who was appointed to represent the children's legal interests, or was acting in both capacities simultaneously. *See id.*

In vacating the original decrees and remanding the case, the panel further directed the trial court to determine whether the children's legal and best interests were in conflict and, further, whether there was a conflict between each child's interests. If the court found that a conflict existed and/or there was a conflict between each child's separate interests, then we directed the court to appoint new counsel to protect the children's legal interests. If the court appointed new counsel, then we directed the court to ascertain whether a new involuntary termination proceeding must occur with the inclusion of proper representation of the children's legal interests. *See id.*

In *In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017), filed on March 28, 2017, our Supreme Court held that Section 2313(a) of the Adoption Act,

23 Pa.C.S.A. § 2313(a),[3] requires that a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for the child's legal interests, which the Court defined as a child's preferred outcome. *Id.* at 180. This Court held that we "must raise the failure to appoint statutorily-required counsel for children *sua sponte*, as children are unable to raise the issue on their own behalf due to their minority." *In re Adoption of T.M.L.M.*, 184 A.3d 585, 588 (Pa. Super. 2018) (citing *In re K.J.H.*, 180 A.3d 411, 414 (Pa. Super. 2017)).

In *In re T.S.*, 192 A.3d 1080 (Pa. 2018), filed on August 22, 2018, our Supreme Court concluded that the children's legal interests in that case were not ascertainable during the termination proceeding because they were only two and three years old. The Court recognized that Section 2313(a) "does not expressly contemplate the circumstance that the child's wishes cannot be ascertained." *Id.* at 1089. Therefore, the *T.S.* Court looked to the analogous

---

[3] Section 2313(a) provides:

> **(a)** **Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S.A. § 2313(a).

provision of the Juvenile Act, "which does contemplate that situation." *Id.*

The Court explained:

> Section 6311 of the Juvenile Act initially states that the guardian *ad litem* is to "represent the legal interests and the best interests of the child." 42 Pa.C.S. § 6311(a). It then specifies that the guardian *ad litem* must "[a]dvise the court of the child's wishes *to the extent that they can be ascertained* and present to the court whatever evidence exists to support the child's wishes." 42 Pa.C.S. § 6311(b)(9) (emphasis added). By straightforward implication, if the wishes of the child cannot be ascertained, the GAL has no duty to "advise the court" of such wishes. For purposes of the proceeding, such wishes do not exist. That is not merely a legal fiction. As explained above, it comports with reality to the extent any participant in the proceedings can discern it. . . .
>
> Such a circumstance does not negate the mandate of Section 2313(a) that counsel be appointed to "represent the child" in contested TPR proceedings. It does, however, bear on the question of whether a conflict arises if the trial court allows the attorney-GAL to fulfill that mandate. As a matter of sound logic, there can be no conflict between an attorney's duty to advance a subjective preference on the child's part which is incapable of ascertainment, and an attorney's concurrent obligation to advocate for the child's best interests as she understands them to be.

*Id.* at 1089-1090. The *T.S.* Court concluded, "where an attorney-GAL is present in such proceedings undertaking the latter task (advocating for the child's best interests), Section 2313(a) does not require the appointment of another lawyer to fulfill the former (advancing the child's unknowable preference)." *Id.* at 1090.

Instantly, the certified record reveals that, on September 11, 2018, the trial court held a hearing on remand to determine whether a conflict existed between the children's legal and best interests. Attorney Dooley testified

- 4 -

during the hearing that, at the time of the involuntary termination proceeding on February 24, 2017, when Child was three years old, and her older sibling was five years old, she "had not seen the children." N.T., 9/11/18, at 9. However, Attorney Dooley testified that she met with the children on the Sunday preceding the hearing on remand, when Child was then age five, and her sibling age seven. *Id.* at 7. She testified that the children "did not indicate that they wanted to go anywhere else other than where they were." *Id.* at 9. The record reveals that the children are in kinship care with their paternal aunt, where they were placed in July of 2015, when Child had just turned two years old, and her sibling was four years old. N.T., 2/24/17, at 7-8.

On inquiry by Mother's counsel, Attorney Dooley testified that she did not ask the children whether they wanted to be adopted "because they don't really understand that." N.T., 9/11/18, at 9. Samirah Cobb, the Community Umbrella Agency ("CUA") case manager, testified that, since May of 2018, she has seen the children on a monthly basis. *Id.* at 10. She testified on cross-examination by Mother's counsel:

Q. Did you ever talk to them about adoption?

A. Yes, I have.

Q. And what did they say?

A. I couldn't use the term adoption because it's nothing they would understand[.] [W]hen I ask[ed] them, "Where would, you know, if you guys had to move where would you guys want to live?"[,] [t]hey informed me, both of them, informed me that they would like to stay with their aunt.

*Id.* at 13.  Ms. Cobb explained on direct examination:

> Q. Would having the conversation about [the children's] desire to be adopted, would they be able to answer that?
>
> A. No.
>
> Q. Is it better off talking to them [about] where they want to live?
>
> A. Yes.
>
> Q. And so having a conversation to determine whether or not there's a conflict in their interest using the term adoption would be confusing to them?
>
> A. Yes.

*Id.* at 10-11.  Moreover, on inquiry by the trial court, Ms. Cobb testified:

> THE COURT: In the time that you've been on the case and your discussion with the prior worker did the children ever indicate that they prefer to live with [M]other?
>
> A. No.

*Id.* at 14.

The trial court concluded that Attorney Dooley acted as a GAL and as the children's counsel during the February 24, 2017 termination proceeding. However, based on the foregoing testimony, the court concluded that no conflict existed between the children's legal and best interests. *Id.*  Therefore, the court found no need for a new termination proceeding.

On September 11, 2018, the court re-entered the original decrees on the docket.  On October 3, 2018, Mother filed a notice of appeal along with a concise statement of errors complained of on appeal with respect to Child only. The trial court filed its Rule 1925(a) opinion on January 17, 2019.

On appeal, Mother raises the following issue for our review:

Whether [t]he trial court erred by taking testimony from the [GAL] where she was acting as a[n] attorney and a litigant at the same time and where her testimony was regarding the desires of the child almost 18 months since the original [termination of parental rights] testimony was taken?

Mother's brief at 5.

Initially, we observe that the involuntary termination of parental rights is governed by 23 Pa.C.S.A. § 2511. When reviewing an order granting or denying termination of parental rights, we accept factual findings and credibility determinations supported by the record, and we review whether the court committed an abuse of discretion or error of law. *In re T.S.*, 192 A.3d at 1087 (citation omitted). We review questions of law *de novo*. *Id.* (citation omitted).

In this case, Mother does not question whether the trial court committed an abuse of discretion and/or error of law with respect to Section 2511. Rather, as detailed *infra*, her sole issue relates to whether the court erred on remand by not holding a new termination proceeding where Child's legal interests would be represented by a separately appointed counsel.

Mother argues in her brief that the trial court erred because Attorney Dooley "was permitted to serve in dual roles but admitted that she did not ask her client at the time of the first [involuntary termination proceeding] and again at the second . . . hearing whether [C]hild wanted to be adopted." Mother's brief at 10. With respect to the foregoing witnesses questioning Child

on remand about where she wanted to live and not whether she wanted to be adopted, Mother argues that adoption "involves a panoply of rights and does not only involve a child's residence." *Id.* at 11. As such, she argues that Attorney Dooley did not comply with this Court's directive on remand to "determin[e] [C]hild's position on adoption." *Id.* at 9.

Further, Mother rejects the testimony that Child was unable to understand the concept of "adoption." She asserts that in *In re T.S.*, *supra*, our Supreme Court "admits that a child of five or six . . . may be able to express his or her desires with respect to adoption." Mother's brief at 10 (citing *In re T.S.*, 192 A.3d at 1089, n. 17). For these reasons, Mother argues that the trial court erred by re-entering the original decree with respect to Child, and she requests that we vacate the decree and remand for a new involuntary termination proceeding.

As discussed above, and contrary to Mother's assertion, this Court did not direct on remand that Attorney Dooley determine Child's position on "adoption." Mother provides no legal authority, and we are aware of none, that provides a child's position on "adoption" is the requisite inquiry in determining his or her legal interests in a contested involuntary termination proceeding.

We agree that adoption "involves a panoply of rights."[4] However, it is important to note that, in cases such as this where the petitioner is a child welfare agency, there is no requirement that adoption be presently contemplated to effect the involuntary termination of parental rights. **See** 23 Pa.C.S.A. § 2512(b) (stating, in part, "If the petitioner is an agency it shall not be required to aver that an adoption is presently contemplated nor that a person with a present intention to adopt exists."); **see also In re Adoption of B.J.R.**, 579 A.2d 906, 915 (Pa. Super. 1990) (stating that the involuntary termination of parental rights is not barred when there is no indication that CYS has found a prospective adoptive family).

Even if a Child's position on "adoption" was part of the requisite inquiry in determining her legal interests, the trial court in this case found it "did not exist[,] or cannot be ascertained[,] due to Child's immaturity. This was not a legal fiction but comported with the reality that the participants in the proceedings could not with absolute certainty discern the wishes and wants of such a young child." Trial Court Opinion, 1/17/19, at 4. The court found that Attorney Dooley ascertained the Child's preferred outcome of the involuntary termination proceeding to the extent she was able in light of Child's inability to understand the concept of adoption due to her age. Insofar as the

---

[4] Our Supreme Court explained long ago, "Adoption is a purely statutory right unknown at the common law. To effect an adoption, the legislative provisions of the Adoption Act must be strictly complied with." **In re Adoption of E.M.A.**, 409 A.2d 10, 11 (Pa. 1979).

testimonial evidence revealed that Child never indicated a preference to live with Mother, we discern no error or abuse of discretion by the court in concluding that a conflict did not exist between Child's legal and best interests. **See In re T.S.**, 192 A.3d at 1089-1090.

Finally, to the extent that Mother relies on **In re T.S.**, **supra**, we observe that she has mischaracterized it. The Court held that the children's legal interests, *i.e.*, preferred outcomes, in that case were not ascertainable because they were only two and three years old. The Court stated, in *dicta*, "Conversely, Pennsylvania's Rules of Professional Conduct refer to 'children as young as five or six years of age . . . having opinions which are entitled to weight in legal proceedings **concerning their custody**.' Pa.R.P.C. 1.14, Explanatory Comment 1."[5] **In re T.S.**, 192 A.3d at 1089, n 17 (emphasis

---

[5] Rule 1.14 provides as follows, in relevant part:

**Rule 1.14. Client with Diminished Capacity**

. . .

EXPLANTORY COMMENT

1§ The normal client-lawyer relationship is based on the assumption that the client, when properly advised and assisted, is capable of making decisions about important matters. When the client is a minor or suffers from a diminished mental capacity, however, maintaining the ordinary client-lawyer relationship may not be possible in all respects. In particular, a severely incapacitated person may have no power to make legally binding decisions. Nevertheless, a client with diminished capacity often has the ability to understand, deliberate upon, and reach

- 10 -

added).  As such, contrary to Mother's assertion, the Court's observation related to child custody matters, not to adoption.  Therefore, **T.S.** is not applicable for the proposition Mother asserts.

For the foregoing reasons, we discern no abuse of discretion by the trial court in concluding that a conflict does not exist between Child's legal and best interests.  It follows that a new involuntary termination proceeding that included separately appointed counsel to represent Child's legal interests was unnecessary.  Accordingly, we affirm the decree involuntarily terminating Mother's parental rights to Child.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/7/19

---

conclusions about matters affecting the client's own well-being. **For example, children as young as five or six years of age, and certainly those of ten or twelve, are regarded as having opinions that are entitled to weight in legal proceedings concerning their custody.**

Pa.R.P.C. 1.14, Explanatory Comment 1 (emphasis added).

- 11 -